# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1336

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Timothy Paul Peroceski, also | * | |
| known as Timothy P. Percoceski, | * | |
| also known as Stimmey, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 12, 2007
Filed: March 28, 2008

_____

Before BYE, ARNOLD, and MELLOY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Timothy Peroceski pleaded guilty to possessing 50 or more grams of methamphetamine with intent to distribute it. *See* 21 U.S.C. § 841(a)(1), (b)(1). In

calculating Mr. Peroceski's sentence, the district court[1] applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon in connection with a drug crime. Mr. Peroceski appeals his sentence and we affirm.

Mr. Peroceski did not dispute any of the facts in the pre-sentence report (PSR) that was prepared for his case, leading the district court to adopt them in their entirety. The PSR recounts that the police found thirteen guns inside the house of Mr. Peroceski's girlfriend, where Mr. Peroceski sometimes stayed. The police found the relevant methamphetamine in his girlfriend's garage and two guns in a camper-trailer on her property. Inside the camper-trailer along with the two guns were court papers belonging to Mr. Peroceski, two checks issued to him, a scale, a light bulb altered into a smoking device, and a quantity of marijuana. As the PSR recommended, the district court found Mr. Peroceski responsible for "at least" the two firearms in the camper-trailer. Mr. Peroceski did not deny possessing the two guns, but he denied that they had any connection with his drugs: He maintained that he took the guns from his suicidal brother at the request of his parents to ensure his brother's safety.

There are two competing lines of cases in our circuit on the question of when it is appropriate to apply an enhancement for possessing a dangerous weapon in connection with a drug crime under U.S.S.G. § 2D1.1(b)(1). One line emphasizes the commentary to the federal sentencing guidelines that says that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n. 3. The second line of cases evidently originates in the general requirement that the government prove the factual premises of a sentence enhancement by a preponderance of the evidence, *see United States v. Malbrough*, 922 F.2d 458, 464 (8th Cir. 1990), *cert. denied*, 501 U.S. 1258 (1991). These cases hold that "the government must show that the weapon was

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

present and that it is at least probable that the weapon was connected with the offense." *United States v. Hayes*, 15 F.3d 125, 127 (8th Cir. 1994), *cert. denied*, 512 U.S. 1225 (1994).

This second approach can be traced to an apparent origin in *United States v. Khang*, 904 F.2d 1219, 1223-24 (8th Cir. 1990), and *United States v. Bost*, 968 F.2d 729, 732 (8th Cir. 1992). These were important early cases that implied, though they did not state outright, that the government must prove a probable connection between the weapon and the drugs. This line of cases grew out of *Bost*, although the first case to rely on *Bost* cited it for the proposition that the government need prove only that a connection is not clearly improbable. *See United States v. Matthews*, 5 F.3d 1161, 1166 (8th Cir. 1993). Shortly afterward, however, we cited *Bost* to support our first unambiguous statement that the government must prove that the weapon was probably connected to the offense. *Hayes*, 15 F.3d at 127. Our opinions on § 2D1.1(b)(1) beginning in 2005 illustrate our inconsistency on this matter. Of the twenty-five published cases that address the relevant guideline, eighteen say that the government must prove that it is not clearly improbable that the weapon was connected to the drug crime,[2] four do not address the matter,[3] two are equivocal,[4] and one says that "not

_____

[2]*United States v. Gordon*, 510 F.3d 811, 818 (8th Cir. 2007); *United States v. Delgado-Paz*, 506 F.3d 652, 654 (8th Cir. 2007); *United States v. Harris*, 493 F.3d 928, 931-32 (8th Cir. 2007), *cert. denied*, 76 U.S.L.W. 3441 (U.S. Feb. 19, 2008); *United States v. Minnis*, 489 F.3d 325, 332-33 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 1097 (2008); *United States v. Gillespie*, 487 F.3d 1158, 1162 (8th Cir. 2007); *United States v. Rodriguez*, 484 F.3d 1006, 1015-16 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 316 (2007); *United States v. Bell*, 477 F.3d 607, 614 (8th Cir. 2007); *United States v. Davis*, 471 F.3d 938, 949 (8th Cir. 2006); *United States v. Willie*, 462 F.3d 892, 898 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 1847 (2007); *United States v. Villareal-Amarillas*, 454 F.3d 925, 931-32 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 989 (2007); *United States v. Ault*, 446 F.3d 821, 824 (8th Cir. 2006); *United States v. Morin*, 437 F.3d 777, 781 (8th Cir. 2006); *United States v. Wattree*, 431 F.3d 618, 623 (8th Cir. 2005); *United States v. Pizano*, 421 F.3d 707, 732 (8th Cir. 2005), *cert. denied*, 546 U.S. 1204 (2006); *United States v. Burling*, 420 F.3d 745, 749-50 (8th Cir. 2005);

clearly improbable" means "probable."[5]  Even within these categories there is some inconsistency in the language employed.

*Aguilar* provides an apt illustration of the uncertainty that our cases have sometimes exhibited on this issue.  In determining whether the enhancement applied, we first quoted our holding in *United States v. Dillard*, 370 F.3d 800, 804 (8th Cir. 2004), that the government must "show by a preponderance of the evidence that a [dangerous weapon] ... was probably connected to the drug offense," but we then concluded based on the guideline commentary that the government had met its burden because it was not "clearly improbable" that the weapon was connected with the offense, *see* U.S.S.G. § 2D1.1 cmt. n. 3.  *Aguilar*, 512 F.3d at 487.

When faced with "competing lines of cases ... [w]e are ... free to choose which line of cases to follow."  *Kostelec v. State Farm Fire & Cas. Co.*, 64 F.3d 1220, 1228 n.8 (8th Cir. 1995).  In considering which line of cases is correct, it is important to note at the beginning that there are actually two separate things that the government must show before the enhancement applies:  that the weapon was present and that it was connected to the offense.  *Matthews*, 5 F.3d at 1166.  Even the cases that rely on

---

*United States v. Savage*, 414 F.3d 964, 966-67 (8th Cir. 2005); *United States v. Noe*, 411 F.3d 878, 889 (8th Cir. 2005), *cert. denied*, 546 U.S. 892 & 1201 (2006); *United States v. Ingles*, 408 F.3d 405, 409 (8th Cir. 2005).

[3]*United States v. Annis*, 446 F.3d 852, 856-57 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 3044 (2007); *United States v. Denton*, 434 F.3d 1104, 1114 (8th Cir. 2006); *United States v. Funchess*, 422 F.3d 698, 703-04 (8th Cir. 2005), *cert. denied*, 546 U.S. 1223 (2006); *United States v. Adams*, 401 F.3d 886, 896 (8th Cir. 2005), *cert. denied*, 546 U.S. 966 (2005).

[4]*United States v. Aguilar*, 512 F.3d 485, 487-88 (8th cir. 2008); *United States v. Torres*, 409 F.3d 1000, 1003 (8th Cir. 2005).

[5]*United States v. Lopez* , 416 F.3d 713, 716 (8th Cir. 2005).

the "not clearly improbable" language of the commentary generally recognize that the government must prove that it was probable that the weapon was present. *See, e.g., id.* The plain language of the commentary shows that the matter of clear improbability relates only to the connection of the weapon with the offense.

The question is thus whether the government must prove that it was probable, or that it was not clearly improbable, that the weapon was connected to the offense. We think that the plain language of the commentary answers the question in favor of the latter principle, and we note that the commentary to the guidelines is binding "unless it is plainly erroneous or inconsistent with" the guideline itself, *Stinson v. United States*, 508 U.S. 36, 45 (1993). Reducing the proof required on the question of connection, moreover, supports the goals of the enhancement. It discourages drug criminals from bringing weapons anywhere near their drugs. It also recognizes that the mere availability of a weapon during a drug crime makes further inquiry into the relation between the two virtually pointless because of the increased risk of violence that the presence of a gun gives rise to.

This logic is sufficiently compelling that it appears that no other circuits have held that the government need prove that the weapon was probably connected to the offense. *See United States v. Hursh*, No. 01-5141, 65 Fed. Appx. 198, 200 (10th Cir. April 14, 2003) (unpublished). The Second and D.C. Circuits avoid discussion of the burden and rely on the commentary to the guidelines without further elaboration. *See United States v. Ortega*, 94 F.3d 764, 767 (2d Cir. 1996); *United States v. Weedon*, No. 02-3027, 71 Fed. Appx. 70 (D.C. Cir. April 15, 2003) (unpublished). All the other circuits have taken the language of clear improbability to reduce what the government must prove to such an extent that the defendant has the burden of disproving the connection once the government has shown that the weapon was present. *See United States v. Anderson*, 452 F.3d 87, 90 (1st Cir. 2006); *United States v. Thornton*, 306 F.3d 1355, 1357 (3d Cir. 2002); *United States v. Davis*, No. 01-4889, 63 Fed. Appx. 76, 81 (4th Cir. April 14, 2003) (unpublished per curiam), *cert. denied*, 540 U.S.

895 (2003); *United States v. Cooper*, 274 F.3d 230, 246 n.8 (5th Cir. 2001); *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996), *cert. denied*, 519 U.S. 858 (1996); *United States v. Berkey*, 161 F.3d 1099, 1102-03 (7th Cir. 1998); *United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir. 1989); *United States v. Alexander*, 292 F.3d 1226, 1231 (10th Cir. 2002); *United States v. Hall*, 46 F.3d 62, 63-64 (11th Cir. 1995) (per curiam).

We respectfully disagree with the circuits that hold that the commentary shifts the burden of proof to the defendant. The burden is always on the government to prove that a defendant is subject to a sentencing enhancement. But in the case of the particular enhancement involved in this case, the guidelines reduce the quantum of proof necessary to make out a case for its application: The government must simply show that it is not clearly improbable that the weapon was connected to the drug offense.

Regarding the character of this connection, "[t]he government need not show that the defendant used or even touched a weapon to prove a connection between the weapon and the offense." *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000) (per curiam). This means that "[e]vidence that the weapon was found in the same location as drugs or drug paraphernalia usually suffices." *Id.* We have also recognized that a well-known tendency of drug criminals to use firearms in connection with their drug activities supports an inference that a gun near the vicinity of drug activity is somehow connected to it. *See United States v. Jones*, 327 F.3d 654, 657-58 (8th Cir. 2003). The gun need not even be operable for it to be connected to the offense. *See United States v. Luster*, 896 F.2d 1122, 1128-29 (8th Cir. 1990).

In the present case there was sufficient evidence to support the district court's application of the enhancement. Mr. Peroceski admitted that the guns were his but denied that they were connected to the crime. He points out that the methamphetamine he pleaded guilty to possessing was found in a safe in his girlfriend's garage, whereas

-6-

the two firearms for which he was held responsible were found in a camper-trailer on the property.  But, as we have already said, the guns were found in the camper-trailer with a light bulb altered into a smoking device, a scale, and a quantity of marijuana; the methamphetamine was found in the safe with a scale and a quantity of marijuana. These facts allowed the district court to infer that Mr. Peroceski's drug activities were sufficiently interrelated that it was not clearly improbable that the guns were connected to his possession of methamphetamine.  We thus detect no error in the district court's holding that the guns were connected to Mr. Peroceski's crime or in its application of § 2D1.1(b)(1).

Affirmed.

_____