# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-2748

_____

United States of America

*Plaintiff - Appellee*

v.

Julie Diane Andrade

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: June 14, 2019
Filed: September 9, 2019
[Unpublished]

_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

_____

PER CURIAM.

Julie Diane Andrade pleaded guilty to conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Andrade argues

that the district court[1] committed procedural error at sentencing by adding a two-level enhancement to her base offense level for possessing a firearm in connection with the conspiracy. We affirm.

## I.

Andrade was involved in a drug trafficking conspiracy that stretched from California to Arkansas. A confidential source informed the Drug Enforcement Administration (DEA) that as early as 2014, Andrade was transporting 10 to 15 pounds of methamphetamine from a supplier in California to coconspirator David Hurl Lemmon twice a month. Agents obtained additional evidence regarding Andrade's involvement in the conspiracy following two traffic stops. Evidence from the second stop forms the basis for this appeal.

In May 2015, a New Mexico sheriff's deputy stopped Andrade and her nephew for careless driving. Andrade told the deputy that she was traveling to care for an ailing friend in Arkansas, but her nephew stated that they were looking for a place for Andrade to live. The conflicting stories raised the deputy's suspicions that the two were up to something illegal and he called for a K-9 unit. The canine alerted to the presence of drugs and officers seized the vehicle. The officers recovered a .22 caliber Beretta handgun, .22 caliber ammunition, an ammunition magazine, and a gun case from the trunk. In the car, they found methamphetamine inside a purse and Andrade's cell phone. Her nephew had a methamphetamine pipe in his pocket. Officers also learned that though Andrade owned the vehicle, it was registered to Lemmon's wife and his former business partner and that Lemmon paid for the vehicle's insurance. Andrade's cell phone contained numerous text messages coordinating the shipment of and payment for large quantities of methamphetamine.

---

[1] The Honorable P.K. Holmes, III, United States District Judge for the Western District of Arkansas.

After Andrade pleaded guilty to conspiracy, the presentence investigation report (PSR) recommended that Andrade receive a two-level enhancement for possessing a firearm, U.S.S.G. § 2D1.1(b)(1), resulting in an adjusted offense level of 38. Andrade received a three-level reduction for her acceptance of responsibility, resulting in a total offense level of 35. Based on a category II criminal history, the Guidelines recommended a sentence between 188 and 235 months in prison.

Over Andrade's objection, the district court applied the two-level enhancement. The court reasoned that Andrade had constructive possession of the gun because the Albuquerque Police Department's property evidence report indicated that the gun was found loose in the trunk, not in a duffle bag as she had claimed. The court then connected the gun and the drugs, explaining that, because "firearms are tools of the trade . . . you can almost assume that firearms are going to be involved" with drugs. Sent. Tr. at 7. Andrade was sentenced to 120 months in prison—a 68-month downward variance from the low end of the Guidelines' range. She timely appealed.

II.

On appeal, Andrade challenges the firearm enhancement again, arguing that she was unaware of the gun's presence and that it was not connected to the conspiracy. We review a district court's factual finding that Andrade possessed a firearm within the meaning of Section 2D1.1(b)(1) for clear error. United States v. Perez-Guerrero, 334 F.3d 778, 783 (8th Cir. 2003). For the enhancement to apply, the Government must prove by a preponderance of the evidence that: (i) a weapon was possessed; and (ii) it was not clearly improbable that the weapon had a nexus with the conspiracy charge. United States v. Anderson, 618 F.3d 873, 880 (8th Cir. 2010).

To prove possession, the Government must show that the defendant actually or constructively possessed a firearm. Id. at 879. Constructive possession requires

that an individual "exercise[] ownership, dominion, or control either over the firearm or the premises on which it is found." Id. at 880 (citation omitted). A finding of constructive possession implies that the defendant knowingly possessed the firearm. United States v. Renteria, 755 F.3d 856, 859 (8th Cir. 2014). To prove a connection between the gun and the crime the government "must simply show that it is not clearly improbable that the weapon was connected to the drug offense." United States v. Peroceski, 520 F.3d 886, 889 (8th Cir. 2008). We have previously stated that there is a nexus between a gun and the drug offense when the gun was found "where part of the conspiracy took place." United States v. Atkins, 250 F.3d 1203, 1214 (8th Cir. 2001); accord Perez-Guerrero, 334 F.3d at 784; Braggs, 317 F.3d at 904. "We have also recognized that a well-known tendency of drug criminals to use firearms in connection with their drug activities supports an inference that a gun near the vicinity of drug activity is somehow connected to it." Peroceski, 520 F.3d at 889.

The district court did not clearly err when it concluded that Andrade had constructive possession of the gun. After reviewing the property evidence report, it ruled that the gun was recovered from the trunk because the report did not "say in a duffle bag in the trunk, [it] says in the trunk."[2] Sent. Tr. at 9. Once the court determined that the gun was loose in the trunk, it could conclude that she possessed it because she owned and operated the vehicle and therefore "had dominion over the area where the gun was found." Id. Moreover, it is well established that the weapon enhancement applies when the defendant was in the same vehicle as the gun. See Perez-Guerrero, 334 F.3d at 783; Braggs, 317 F.3d at 905; Atkins, 250 F.3d at 1214.

_____

[2] Implicit in Andrade's argument is that the district court's conclusion that the gun was in the trunk and not a duffle bag within the trunk was not supported by evidence. When a defendant objects to a PSR's factual findings, a sentencing court must make a finding with respect to those disputed facts and it must do so based on evidence and not the PSR. United States v. Hudson, 129 F.3d 994, 995 (8th Cir. 1997) (per curiam). Here, the court relied on the property evidence report, not the PSR.

-4-

There is also a clear nexus between the gun and the drug trafficking conspiracy. The gun was in the vicinity of drug trafficking because it was found in a vehicle: (i) driven by Andrade who pleaded guilty to knowingly trafficking methamphetamine; (ii) registered to Lemmon's wife and his former business partner; and (iii) insured by Lemmon. In addition, the DEA learned that Andrade was transporting 10 to 15 pounds of methamphetamine to Lemmon and text messages showed that she was coordinating the shipment of and payment for large quantities of methamphetamine. Because the gun was found in the trunk and the vehicle was used in the conspiracy, it is not clearly improbable that the gun was connected to the conspiracy.

III.

The sentence is affirmed.

_____