# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3488

_____

United States of America

*Plaintiff - Appellee*

v.

Giovany Frank Guzman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: November 15, 2019
Filed: January 2, 2020

_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge

A jury found Giovany Frank Guzman guilty on three counts: conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846; conspiracy to import cocaine into the United States, in violation of 21 U.S.C. §§ 960(a)(3), 960(b)(2)(B), and 963; and attempted possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B),

and 846. The district court[1] sentenced Guzman to 190 months' imprisonment on each count, to run concurrently. Guzman appeals his sentence, challenging his drug-quantity based offense level and the role-enhancement imposed under U.S. Sentencing Guidelines (Guidelines) § 3B1.1(b). Guzman also challenges the sufficiency of the evidence to sustain his conviction. We affirm.

Following a trip to Mexico with Oscar Gomez, Guzman's uncle and co-defendant, Guzman sent Gomez the names and addresses of four individuals. These addresses were provided to him by Shelby Williams, another co-defendant. On January 24, 2017, Customs and Border Protection intercepted a suspicious package sent to one of the addresses Guzman had texted to Gomez. The package was labeled as "fiber stairs," but after further inspection, Customs and Border Protection discovered that the package contained 2,990 grams of cocaine. The package was then returned to UPS for a controlled delivery. After communicating with Guzman, Williams picked up the package from the UPS store and delivered the package to him. Later that evening, law enforcement executed a search warrant at Gomez's house and seized the package.

Around the same time, a second package of "stairs for aerobics" was intercepted by Customs and Border Protection. The package matched one of the names and addresses Guzman had texted to Gomez and contained two kilograms of cocaine. No controlled delivery was attempted of this package. A third and final package, weighing 8.7 kilograms, was picked up at a FedEx location in Moline, Iowa. Law enforcement did not seize or inspect this package because they did not learn of its delivery until later in the investigation. The package's description, "aerobic step," was similar to the other two intercepted packages and matched an address provided to Guzman by Williams.

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

At sentencing, the district court, adopting the presentence report (PSR), attributed all three packages to Guzman, found that the amount of cocaine involved exceeded five kilograms, and held that Guzman's base offense level was 30. See U.S.S.G. § 2D1.1(a)(5), (c)(5). The district court also applied a three-level enhancement to Guzman's base offense level as a manager or supervisor of Williams. See U.S.S.G. § 3B1.1(b). The court determined that Guzman's total offense level was 35, that his criminal history category was IV, and that his advisory sentencing range was 235 to 293 months' imprisonment.

Guzman first argues that insufficient evidence exists to support his convictions on all counts. He contends that the government failed to prove that he had knowledge of the contents of any of the packages.

In reviewing sufficiency of the evidence claims, we view the evidence in the light most favorable to the government. United States v. Vinton, 429 F.3d 811, 815 (8th Cir. 2005). "We must uphold the verdict if any reasonable jury could have found the elements of the crime beyond a reasonable doubt." Id. (quoting United States v. McDougal, 137 F.3d 547, 553 (8th Cir. 1998)). The evidence supports the jury's finding that Guzman knew that the packages contained cocaine and knew the purpose of the agreement in which he had joined. The government presented evidence that Guzman had traveled to Leon, Mexico with Gomez. Soon after their trip, Guzman texted Gomez addresses and names of individuals. Packages were shipped from Leon, Mexico to the addresses provided by Guzman. Guzman received the packages from Williams and then gave them to Gomez. Guzman's surreptitious behavior with respect to the packages and his involvement with receiving the packages could lead a jury to conclude that Guzman knew of the packages' illicit contents. We thus hold that there was sufficient evidence to support all three counts of Guzman's convictions.

Guzman also challenges the district court's calculation of his offense level, arguing that the district court clearly erred in determining that the conspiracy involved five or more kilograms of cocaine. See United States v. Marshall, 411 F.3d 891, 894 (8th Cir. 2005) (standard of review). We disturb the district court's determination "only if the entire record definitely and firmly convinces us that a mistake has been made." United States v. Titlbach, 300 F.3d 919, 923 (8th Cir. 2002).

The district court concluded that Guzman was responsible for all three packages, the combined contents of which consisted of more than five kilograms of cocaine. Although Guzman concedes that the first two packages together amounted to at least 4,990 grams, he argues that the district court clearly erred in attributing the third package to him, with the result that the determination of any amount of cocaine in the third package constituted "mere speculation" by the district court.

The district court did not clearly err when it held that the third package had some amount of cocaine attributable to Guzman. The package's name and address matched a name and address provided by Guzman to Gomez. As with the other two packages, this package originated from Leon, Mexico and was labeled as an "aerobic step." Williams also admitted to picking up a package from FedEx for Guzman. Although the third package was never inspected by law enforcement, sufficient circumstantial evidence connected the package to Guzman, and given the temporal proximity to the delivery of the other packages, it was reasonable to conclude that at least ten grams of cocaine were in the third package. See United States v. Atkins, 250 F.3d 1203, 1212 (8th Cir. 2001) ("[The Guidelines] gives the court the authority to approximate the quantity of drugs where there is no seizure or where the amount seized does not reflect the scale of the offense."). The district court thus did not clearly err when it found that the quantity of cocaine exceeded five kilograms.

Finally, Guzman argues that the district court clearly erred in finding that he had acted as a manager or supervisor. See United States v. Cosey, 602 F.3d 943, 947 (8th Cir. 2010) (standard of review). Under Guidelines § 3B1.1(b), Guzman's offense level was subject to a three-level increase if he was a "manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." We have held that a defendant may be subject to the enhancement even if he managed or supervised only one participant, limited to a single transaction. See United States v. Valencia, 829 F. 3d 1007, 1012 (8th Cir. 2016). The evidence supports the district court's application of the enhancement. Guzman used Williams to provide the names and addresses of individuals, so that Guzman could transmit these to Gomez. Guzman also directed Williams to pick up packages at UPS and FedEx and told her where to meet him. Given this evidence, the district court's finding that Guzman was a manager or supervisor of Williams was not clearly erroneous.

The judgment is affirmed.

_____